IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELIA M. SCOTT, an individual,

    Plaintiff,

v.

DELTA SAND AND GRAVEL CO.,
a corporation, and STANLEY H.
PICKETT, an individual,

    Defendants.

Case No. 6:18-cv-02202-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Shelia Scott, in her motion for partial summary judgment, alleges she was fired because of a planned surgery and participation in other protected activities. Defendants, in their motion for summary judgment, counter that her job had become redundant after a corporate acquisition. Because the Defendants' decision to terminate the Plaintiff was motivated by Plaintiffs intent to seek medical leave, the Court GRANTS Plaintiff's Partial Motion for Summary Judgment (ECF No. 23) while Defendants' Motion for Summary Judgment (ECF No. 26) is GRANTED in part and DENIED in part.

## **BACKGROUND**

    Defendant Delta Sand and Gravel Co. ("Delta") hired Plaintiff in 2016. Def.'s Mot. for Summ. J. 3, ECF No. 26. Plaintiff claims that Delta initially hired her to improve Delta's operations and alleges ten separate times when Plaintiff raised concerns about Delta's operational style.

1 – OPINION AND ORDER

Compl. ¶¶ 21–30, ECF No. 1; Decl. of Andrea Coit, Ex. 1, Pl.'s Offer Letter from Delta and Job Description, ECF No. 24 (describing her objective at Delta to be to "improve processes in sales, quality control, and production operations"). Delta later promoted Plaintiff to the role of Sales and Dispatch Manager, where she was responsible for Delta's sales, along with scheduling delivery drivers. Def.'s Mot. for Summ. J. 3. Defendant Stanley H. Picket, Delta's President and General Manager, was Plaintiff's direct supervisor. Pl.'s Mot. for Partial Summ. J. 1, ECF No. 23. According to Pickett, he had complete discretion in making personnel decisions and did not answer to Delta's Board of Directors. *Id.* at 2–3; Decl. of Andrea D. Coit, Ex. 1, Depo. of Stanley Pickett 53:2-4.

While Plaintiff worked for Delta, she received no formal or informal disciplinary actions. Pl.'s Mot. for Partial Summ J. 3. Yet there was some concern with her ability to interact with other Delta managers, an issue that Plaintiff acknowledged during her deposition testimony. Def.'s Mot. for Summ. J. 3. Pickett discussed this issue with her and contends he tried to help improve these relationships. *Id.* Importantly, Plaintiff disputes this characterization and instead alleges that these conflicts were times where Plaintiff was trying to "implement positive change." Pl.'s Resp. to Def.'s Mot. for Summ. J. 2, ECF No. 30.

At the beginning of 2018, Pickett raised the possibility of terminating Plaintiff. Pl.'s Resp. to Def.'s Mot. for Summ. J. 3–4. In May 2018, Delta's former Human Resources Manager counseled Pickett that terminating Plaintiff would be difficult because she had nothing negative in her personnel file. *Id.* at 4. Regardless, Pickett said that he planned to discuss terminating with Delta's Board of Directors and did so at a board meeting on June 20, 2018. *Id.* Heather Saal, a member of Delta's Board of Directors and the Board's secretary, customarily took handwritten notes that helped create the official Board minutes. Decl. of Andrea D. Coit, Ex. 6, Saal's Notes

from June 20, 2018, Delta Board of Director's Meeting. These notes suggest that Pickett planned on firing Plaintiff after the busy season, which would have likely been January 2019. *Id.* Although these handwritten notes reflect that Delta's Board of Directors discussed Plaintiff's future employment, Ms. Saal did not include these notes in the official minutes entered for the June 20, 2018 Delta Board Meeting. *See* Decl. of Andrea D. Coit, Ex. 7, Official Minutes for June 20, 2018 Delta Board Meeting.

Crucial to this case, Plaintiff also suffered from severe back issues. Def.'s Mot. for Summ. J. 4. On September 20, 2018, Plaintiff emailed Pickett informing him that she had back surgery scheduled for October 30, 2018. Plaintiff and Pickett met twelve days later to discuss her back surgery. *Id.* At this meeting, Pickett told Plaintiff that if she needed leave, Delta would grant her as much paid time as needed. *Id.*

Unknown to Plaintiff, Delta had spent the past two years trying to acquire Conveyered Aggregate Delivery, Inc. ("CAD"), a Eugene company operated by Jeffrey Chapman. *Id.* at 5–6. After Plaintiff and Pickett's meeting on her back surgery, Pickett reached out to Mr. Chapman to make sure that Delta could finalize the acquisition of CAD by January 1, 2019. Pl.'s Mot. for Partial Summ. J. 8. After receiving assurance from Mr. Chapman that the deal would go through, Pickett terminated Plaintiff ten days after their meeting. *Id.* On the day she was fired, Plaintiff was presented with a settlement and release contract that would have kept Plaintiff on Delta's payroll through the end of 2018 and provide her health insurance coverage for two and one-half months. *Id.* at 10–11. Plaintiff refused to sign the agreement and Delta immediately revoked it. *Id.* Accordingly, Delta never provided Plaintiff any form of severance. *Id.* at 11.

## STANDARDS

The Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict for the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Plaintiff moves for summary judgment on her Family and Medical Leave Act ("FMLA") claim. Defendants move for summary judgment on all claims brought by Plaintiff. The Court discusses each in turn.

### I. FMLA Claims

The FMLA protects employees who must miss work because of illnesses, including necessary surgeries. 29 U.S.C. § 2612. An employer violates the FMLA "by engaging in activity that tends to chill an employee's freedom to exercise [their] rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1123 (9th Cir. 2001). For Plaintiff to prevail on her FMLA claim, she must show by a preponderance of the evidence that: "(1) [she] was eligible for the FMLA's protections, (2) [her] employer was covered by the FMLA, (3) [she] was entitled to leave under the FMLA, (4) [she] provided sufficient notice of [her] intent to take leave, and (5) [her] employer denied [her]

FMLA benefits to which [she] was entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (citations omitted). The only factors at issue are whether Plaintiff provided Delta sufficient notice of her intent to leave and whether Delta improperly denied her FMLA benefits.

**A. FMLA Notice**

Defendants argue that Plaintiff's notice was insufficient because "Plaintiff . . . had obtained a second opinion, was feeling better, and was no longer sure she wanted to proceed with surgery." Def.'s Resp. 13, ECF No. 30. From Defendants perspective, Plaintiff's hesitation at going through with her scheduled surgery means that she failed the notice requirement.

The Court disagrees. For non-emergency surgeries, the notice requirement under the FMLA merely requires an employee to notify an employer of the pending medical procedure thirty days before. 29 U.S.C. § 2162(e)(2)(B). Notice is sufficient as long as the employee informs the employer of the "anticipated timing and duration of the leave." *See* 29 C.F.R. §§ 825.302(c), 825.303(a). Here, not only did Plaintiff email Pickett more than thirty days before her scheduled surgery, but she also met with Pickett to discuss anticipated timing concerns. Even if Defendants possibly thought that Plaintiff was not going to follow through with her surgery, the onus was still on them to find out whether Plaintiff was seeking FMLA leave. *Id.* § 825.303(b) ("The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought."). As a result, Plaintiff's notice was sufficient.

**B. Denial of FMLA Benefits**

The Court next turns to whether Plaintiff was denied FMLA benefits. While Plaintiff advanced multiple theories for how Defendants denied her FMLA protection, her strongest theory is that Defendants denied her benefits by termination.

Generally, the Ninth Circuit has consistently held that an employer may be liable for interfering with an employee's FMLA benefits by using the right to leave as "a negative factor" in employment actions, including terminations. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133–34 (9th Cir. 2003). That said, Defendants now argue that the standard has changed and that the Court should apply a more stringent "but for" standard, specifically relying on *Murray v. Mayo Clinic*, 934 F.3d 1101 (9th Cir. 2019). Def.'s Mot. for Summ. J. 17.

In *Murray*, the Ninth Circuit altered previous case law for retaliation claims under the Americans with Disabilities Act by finding that the statute described a but-for causation standard, rather than the once applied "motivating factor" standard. 934 F.3d at 1105–06. The *Murray* court specifically cautioned lower courts "not to apply the rules applicable under one statute to a different statute without careful and critical examination." *Id.* at 1106. After examining the FMLA statute, the Court disagrees with Defendants assertion that Plaintiff needs to meet more than a "negative factor" standard. *C.f. Clark v. AmTrust N. Am.*, No. 18-15421, 2019 WL 6249323, at *2 (9th Cir. Nov. 22, 2019) (applying a negative factor standard after the *Murray* decision).

The Court also finds that it is unquestionable that Plaintiff's request for medical leave was a negative factor in Defendants decision to terminate her. During his deposition, Pickett explained his termination decision by testifying:

> [At the] October 2nd meeting – when she came in and talked about her potential back surgery . . . *I was going to have to terminate her as soon as possible so she could have the best information in front of her to make the decision of what she was going to have to go through.*

Decl. of Andrea Coit, Ex. 1, Depo. of Stanley Pickett 212:19-25, 213:1-16 (emphasis added). Delta's Human Resources Manager testified that even before the in-person meeting, Plaintiff's email likely triggered Delta's obligation to gather additional facts to determine FMLA eligibility.

Decl. of Caitlin Shin, Ex. 4, Depo. Of Duane Grange 29:13-24, 30:2-9, ECF No. 27. In an analogous situation, the Ninth Circuit held that after a plaintiff provide her employer with two doctor's notes, the employer needed to inquire further as to whether the plaintiff was entitled to FMLA protections. *Bachelder*, 259 F.3d at 1131. The *Bachelder* court also rejected the employer's argument that they had pretext for firing the plaintiff, instead finding "that the taking of the leave for the period in question was indeed used as a negative factor because America West so announced at the time of the discharge and does not deny that fact now." *Id.*

Likewise, Pickett's testimony is an explicit admission that Plaintiff's attempt to seek FMLA leave was a negative factor in Delta's decision to terminate her. For these reasons, the Court finds that Defendants interfered with Plaintiff's protected FMLA leave and GRANTS Plaintiff's Motion for Partial Summary Judgment.

## II. OFLA Claims

Defendants move for summary judgment on Plaintiff's Oregon Family Leave Act ("OFLA") interference claims, arguing that Delta offered her leave and Plaintiff cannot prove that her request for leave was the cause of her termination. The OFLA is construed in a manner consistent with any similar provisions of the FMLA. Or. Rev. Stat. § 659A.186(2); *Sanders*, 657 F.3d at 783 (explaining that a district court should apply the same legal standards to FMLA and OFLA claims). Plaintiff only needs to prove that her request for leave was a negative factor in Delta's termination decision. *Bachelder*, 259 F.3d at 1131. Because the same legal standards apply to Plaintiff's FMLA and OFLA claims, the Court finds Plaintiff is entitled to a summary judgment on her OFLA claim against Delta. *Sanders*, 657 F.3d at 783.[1]

---

[1] Both parties concede that proof of an FMLA interference claim is also proof of an OFLA interference claim. Def.'s Mot. for Summ. J. 26–27; Pl.'s Resp. to Def.'s Mot. for Summ. J. 17, ECF No. 34.

7 – OPINION AND ORDER

While Plaintiff has established OFLA liability against Delta, Plaintiff's claim against Pickett under the OFLA fails. An individual may only be liable if they are a "covered employer." Or. Rev. Stat. § 659A.153(1). Covered employers must "employ 25 or more persons in the State of Oregon for each working day during each of 20 or more calendar workweeks in the year in which the leave is to be taken." *Id.* Since Pickett does not personally employ anyone, the OFLA claims against Pickett are DISMISSED.

### III. Whistleblower Claims

Defendants also move for summary judgment on Plaintiff's claims under Or. Rev Stat § 659A.199(1) and Or. Rev. Stat. §659A.030(1)(f), arguing that Plaintiff cannot show a causal connection between her protected activity and termination, or in the alternative, that Plaintiff fails to provide evidence of pretext. For retaliation claims, such as the ones here, the Court applies the *McDonnell Douglas* burden-shifting analysis. *Snead v. Metro Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093–94 (9th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

To survive summary judgment under the *McDonnell Douglas* standard, Plaintiff must first establish a prima facie case of employment retaliation. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088–89. If a prima facie case is established, the burden then shifts to the employer who must provide a "legitimate, nondiscriminatory reason for the challenged action." *Id.* Finally, if the employer provides such a reason, then Plaintiff "must show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 115, 1123–24 (9th Cir. 2000)).

First, to establish a prima facie case, Plaintiff must show: (1) that she was engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that "there was a

8 – OPINION AND ORDER

causal link between the protected activity and the adverse employment decision." *Larmanger v. Kaiser Found. Health Plan of the Nw.*, 895 F. Supp. 2d 1033, 1053 (D. Or. 2012), *aff'd,* 585 F. App'x 578 (9th Cir. 2014). The level of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of preponderance of the evidence." *Dominquez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005); *see also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) ("In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses.").

As discussed, Delta first hired Plaintiff to enact change at their company and Plaintiff allegedly engaged in protected activities by raising concerns about Delta's operations ten times. Decl. of Andrea Coit, Ex. 1, Pl.'s Offer Letter from Delta and Job Description (describing her objective at Delta to be to "improve processes in sales, quality control, and production operations"); Pl.'s Compl. ¶¶ 20–30. Plaintiff also suffered an adverse employment action; Defendant denied her FMLA protected leave through termination. While Defendants argue that Plaintiff cannot prove a causal link, "the causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative . . . action are not completely unrelated." *Syrop v. Whole Foods Mkt. of the Pac. Nw.*, No. 3:14-cv-01293-ST, 2015 WL 7180488, at *2 (D. Or. Oct. 20, 2015) (alteration in original) (quotation and citation omitted). Because there are notes in the record implying that Pickett was annoyed with Plaintiff's complaints, the Court construes the causal link element broadly in Plaintiff's favor. Decl. of Andrea D. Coit, Ex. 6, Saal's Notes from June 20, 2018, Delta Board of Director's Meeting.

The burden now shifts to Defendants to provide "admissible evidence which would allow a trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 257 (1981). Defendants point to the acquisition of CAD by Delta, specifically noting that a condition of their agreement was that Mr. Chapman wished to assume the duties Plaintiff formerly handled. Decl. of Caitlin Shin, Ex. 1, Depo. of Jeffrey Chapman 26:15-19, ECF No. 38. To fulfill this condition, Pickett argues that he had to terminate Plaintiff so Mr. Chapman could become the new Sales and Dispatch Manager. Decl. of Caitlin Shin, Ex. 1, Pickett Depo. 216:2-5. Although Plaintiff urges the Court to find the CAD acquisition irrelevant to her termination, for this motion, the Court finds that Defendants have satisfied their burden.

Because Defendants have provided a legitimate, nondiscriminatory reason for the challenged action, Plaintiff now has the burden to show pretext. Plaintiff may satisfy this burden by either providing direct or circumstantial evidence. *McDonnell Douglas*, 411 U.S. at 804–05; *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094–95 (9th Cir. 2005). Importantly, "temporal proximity between protected activity and an adverse employment action by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003). Plaintiff alleges both direct and circumstantial evidence of pretext to satisfy her burden. For example, Plaintiff presented direct evidence that Pickett wanted to terminate her because she had complained about how male supervisors were treating employees based on gender. *See* Hannan Decl. ¶¶ 2–3, ECF No. 36. There is also the fact that Pickett had started to investigate whether Plaintiff's file had justification for terminating her. Decl. of Andrea Coit, Ex. 4, Depo. of Heather Saal 43:20-25, 44:1-2. This direct evidence, combined with the

circumstantial evidence of temporal proximity between Plaintiff's participation in protected activity and later termination, presents a genuine issue of material fact for a jury.

For these reasons, Defendants Motion for Summary Judgment on Plaintiff's whistleblowing claims is DENIED because a jury could decide that Plaintiff was fired and denied FMLA leave due to her participation in protected activity.

## IV. Aiding and Abetting Claim

Finally, Defendants move for summary judgment on Plaintiff's aiding and abetting claim against Pickett, arguing that he cannot be liable under Or. Rev. Stat. § 659A.030(1)(g). Plaintiff concedes Defendants' argument but asks the Court for leave to amend their complaint against Pickett. Pl.'s Resp. to Def's Mot. 19. Fed. R. Civ. P. 15(a)(2) directs the Court to "freely give leave [to amend] when justice requires." But leave to amend may be denied if allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party acts in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). The Court finds none of these factors apply and instead finds that Plaintiff has fourteen days from the date of this opinion to file an amended complaint.

## CONCLUSION

Based on these reasons, Plaintiff's Motion for Partial Summary Judgment (ECF No. 23) is GRANTED and Defendants' Motion for Summary Judgment (ECF No. 26) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 3rd day of April, 2020.

                                                 /s/ Michael J. McShane
                                                      Michael McShane
                                             United States District Judge