**Andrea D. Coit, OSB #002640**
acoit@eugenelaw.com
**Jonathan M. Hood, OSB #133872**
jhood@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:    (541) 686-9160
Facsimile:    (541) 343-8693
Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **SHEILA M. SCOTT,** an individual, | Case No.    6:18-CV-02202-MC |
| Plaintiff, | **MOTION FOR LEAVE TO AMEND COMPLAINT TO ALLEGE CLAIM FOR WRONGFUL DISCHARGE** |
| vs. | |
| **DELTA SAND AND GRAVEL CO.,** an Oregon corporation, and **STANLEY H. PICKETT**, an individual, | |
| Defendants. | |

### LR 7-1 CERTIFICATE

Counsel for Plaintiff Sheila Scott certifies that she has made a good faith effort to confer with counsel for Defendants on this motion.  Counsel for Defendants oppose the motion for leave to file a Second Amended Complaint.

### MOTION

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff Sheila Scott requests an order from the Court allowing her to file a Second Amended Complaint in the form attached hereto as Exhibit A.  The purpose of the amendment is to add a claim for common law wrongful discharge against Defendant Delta Sand and Gravel.

1 –    MOTION FOR LEAVE TO AMEND COMPLAINT TO ALLEGE CLAIM FOR WRONGFUL DISCHARGE

## POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Sheila Scott (Scott) was fired by Defendant Stanley Pickett (Pickett) and Defendant Delta Sand and Gravel (Delta) on October 12, 2018.  Scott filed her Complaint, initiating this lawsuit, on December 20, 2018.  Dkt. No. 1.  In that Complaint, she alleged claims of interference with her rights under the FMLA and OFLA, violation of ORS 659A.199, and violations of ORS 659A.030(1)(f) and (1)(g).  In her Complaint, Scott sought damages for economic losses in excess of $1,000,000.00 plus prejudgment interest, non-economic losses in the amount of $1,000,000.00, punitive damages in the amount of $250,000.00 against both Pickett and Delta, an award of costs and attorneys' fees, and an alternative claim for equitable relief in the form of reinstatement.  Scott moved for partial summary judgment on her claims for interference with her rights under the FMLA and OFLA.  Dkt. No. 23.  By its Opinion and Order dated April 3, 2020, this Court granted Scott's Motion for Partial Summary Judgment, finding that Delta interfered with Scott's rights under the FMLA and OFLA by terminating her.  Dkt. No. 47.  Also in its Opinion and Order, the Court allowed Scott leave to amend her Complaint to allege her individual claim against Pickett under ORS 659A.030(1)(f) rather than (g).  *Id.*  Scott filed her First Amended Complaint on April 16, 2020, making that change. Dkt. No. 48.

Having obtained summary judgment on her interference claims under FMLA and OFLA, Scott is entitled to an award of her economic losses resulting from the interference, prejudgment interest, liquidated damages, equitable relief, and her costs and reasonable attorney fees.  She is not entitled to an award of her non-economic damages or punitive damages.  Scott's proposed claim for wrongful discharge relies on the same evidence as her claims under the FMLA and OFLA for its proof.  The proposed claim for wrongful discharge, if proven, will allow Scott to recover from Delta her non-economic and punitive damages.  Thus, to ensure Scott is fully compensated for all damages suffered as a result of Defendants' interference with her rights under the FMLA and OFLA through termination, she seeks to amend her Complaint to allege a claim for wrongful discharge.

## II.    LAW AND ARGUMENT

Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment ...." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon,* Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the *Foman* factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party ... carries the greatest weight." *Id.* The party opposing amendment "bears the burden of showing prejudice" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-7 (9th Cir. 1987). Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. *Eminence Capital,* 316 F.3d at 1052 (9th Cir. 2003), *citing Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir.1997).

As is seen from Exhibit A, the proposed new claim for wrongful discharge is based entirely on the same factual transaction as Scott's claims under the FMLA and OFLA. The facts supporting the FMLA/OFLA interference claims also support a wrongful discharge claim. The claims are, in essence, the same claims. The only difference is the damages recoverable under both. Plaintiff is not, however, alleging any new or additional damages. All of the damages sought in the claim for proposed wrongful discharge have been pleaded as damages recoverable in the ORS 659a.199 and ORS 659A.030 claims since in the initial Complaint was filed.

A claim for wrongful discharge is stated when the plaintiff alleged she was terminated in retaliation for exercising an a job related right of important public interest. *Yeager v. Providence Health Sys. Oregon*, 195 Or. App. 134, 140 (2004) (quotation omitted). *See also Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012) (same). In *Yeager,* the Oregon Court of Appeals held that "a complaint that includes an allegation that the plaintiff was discharged in retaliation for invoking her rights under OFLA states a claim for common-law wrongful discharge." *Yeager,* 195 Or. App at 142-43. For purposes of a wrongful discharge

claim under Oregon law, causation exists when the employer's wrongful purpose was a factor that made a difference in the discharge decision. *Shaw v. R.U. One Corp.*, 822 F. Supp. 2d 1094 (D. Or. 2011). Here, this Court has already determined that Scott's need for protected leave was a negative factor in Pickett's termination decision as a matter of law.

Thus, the addition of the new claim requires no additional discovery, is not futile, nor is it brought in bad faith. Plaintiff is simply seeking to ensure her recovery of all damages to which she is entitled. Defendants have been on notice of, and defending against, the facts giving rise to the wrongful discharge claim, including all facts on which is it based and all damages Plaintiff seeks, since the lawsuit was initiated. The burden of having to defend a new claim is not undue prejudice under Rule 15 if that defense results in no actual prejudice. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d at 186 ("[L]iberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties. It is, however, subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice"); *United States v. Webb*, 655 F.2d 977, 980 (9th Cir.1981) (Mere addition of new claims in motion for leave to amend insufficient to support denial under Rule 15).

Neither is the timing of the motion for amendment sufficient to justify denial of Scott's motion for leave to amend. In *Howey v. United States*, 481 F.2d 1187, 1190–91 (9th Cir. 1973), the Ninth Circuit reversed the lower court's denial of a motion to amend due to a lack of showing of prejudice, despite the motion to amend coming five years after the filing of the operative complaint. The court explained:

> The government's motion to amend should have been granted as there was no showing that RCA would have been prejudiced thereby. While it is true that the motion was made five years after the third party complaint had been filed, we know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend. Where there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny such a motion. The purpose of the litigation process is to vindicate meritorious claims. Refusing, solely because of delay, to permit an amendment to a pleading in order to state a potentially valid claim would hinder this purpose

> while not promoting any other sound judicial policy. Only where
> prejudice is shown or the movant acts in bad faith are courts
> protecting the judicial system or other litigants when they deny
> leave to amend a pleading.

Plaintiff's claim for wrongful discharge is meritorious. Leave should be granted to allow her to amend the First Amended Complaint to allege a claim for wrongful discharge.

Defendants oppose this motion on the basis it should be reviewed for good cause under Fed. R. Civ. P. 16. However, the parties chose not to include a deadline for the amendment of the pleadings in their Rule 26(f) report to the Court (Dkt. No. 16), and no such deadline was imposed by the Court in either the initial scheduling order issued after the parties' submission of the Rule 26(f) report (Dkt. No. 17), or any subsequent orders extending deadlines (Dkt. No. 22). Thus, good cause for extension of the scheduling order deadlines would only be needed if the filing of the Second Amended Complaint also requires an extension of any of the deadlines that were imposed by the Court. As noted above, there is no basis to seek further discovery as a result of the additional claim. No new facts have been alleged and no new damages are sought. The discovery deadline does not need to be extended. Plaintiff waives any right to file a dispositive motion on the new claim. The dispositive motion deadline does not need to be extended. No other deadlines are potentially impacted.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff Sheila Scott requests leave of Court to file a Second Amended Complaint in the form and substance depicted in Exhibit A.

DATED this 26th day of May, 2020.

HUTCHINSON COX

By:    s/Andrea D. Coit
      Andrea D. Coit, OSB #002640
      Jonathan M. Hood, OSB #133872
      Of Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on May 26, 2020, I served or caused to be served a true and complete copy

of the foregoing **MOTION FOR LEAVE TO AMEND COMPLAINT TO ALLEGE**

**CLAIM FOR WRONGFUL DISCHARGE** on the party or parties listed below as follows:

☒    Via the Court's Efiling System

☐    Via First-Class Mail, Postage Prepaid

☐    Via Email

☐    Via Personal Delivery

☐    Via Facsimile

Sarah E. Ames
sarahames@dwt.com
Christie S. Totten
christietotten@dwt.com
Davis Wright Tremaine LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201
Facsimile: (503) 778-5299
        Of Attorneys for Defendants

HUTCHINSON COX

By:    s/Andrea D. Coit
        Andrea D. Coit, OSB #002640
        Jonathan M. Hood, OSB #133872
        Of Attorneys for Plaintiff

**Andrea D. Coit, OSB #002640**
**acoit@eugenelaw.com**
**Jonathan M. Hood, OSB #133872**
**jhood@eugenelaw.com**
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:    (541) 686-9160
Facsimile:    (541) 343-8693
Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **SHEILA M. SCOTT,** an individual, | Case No.  6:18-CV-02202-MC |
| Plaintiff, | **SECOND~~FIRST~~ AMENDED COMPLAINT** |
| vs. | **Violation of 29 U.S.C. §§ 2601–2654 (Interference with FMLA); ORS § 659A.150–659A.186 (Interference with OFLA); ORS 659A.199 (Private Whistleblower Retaliation); ORS 659A.030(1)(f) (Retaliation for Opposing Unlawful Practice); ORS 659A.030(1)(f) (Individual Liability for Opposing Unlawful Practice); Wrongful Discharge** |
| **DELTA SAND AND GRAVEL CO.,** an Oregon corporation, and **STANLEY H. PICKETT**, an individual, | |
| Defendant. | |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff, Sheila M. Scott, alleges as follows:

**PARTIES**

1.

Defendant Delta Sand and Gravel Co. (Delta) is an Oregon corporation providing sand

and gravel products to Oregon consumers.  Delta does business in Lane County, Oregon, and its

headquarters is located in Eugene, Oregon.

1 – ~~FIRST~~ SECOND AMENDED COMPLAINT

2.

Defendant Stanley H. Pickett (Pickett) is the General Manager and President of Delta.  At all times material here, Pickett was acting in the scope of his employment with Delta.

3.

Plaintiff Sheila M. Scott is an Oregon resident and former Sales and Dispatch Manager for Delta.  Delta terminated her employment on October 12, 2018.

## JURISDICTION

4.

This Court has jurisdiction to hear Ms. Scott's federal law claim under 18 U.S.C. § 1331. Supplemental jurisdiction over Ms. Scott's state law claims is appropriate under 28 U.S.C. § 1367 because the state and federal claims are so related that they form part of the same case or controversy under Article III of the U.S. Constitution.

## VENUE

5.

Venue is appropriate in this Court under 28 U.S.C. § 1391 because all parties reside in Oregon.

## FACTS COMMON TO ALL CLAIMS

### Ms. Scott was a Sales Superstar and Exceptional Leader

6.

Delta hired Ms. Scott on or around October 31, 2016, as a full time Sales Manager with an annual salary of $65,000 plus a bonus equal to a certain percentage of salary.  Ms. Scott was supervised by and reported directly to Mr. Pickett.

7.

From the start, Ms. Scott was Delta's highest performing sales manager.  In 2017, sales growth in Ms. Scott's responsible division exceeded 10% over the previous year.  In 2018, prior to her termination, Ms. Scott's sales growth exceeded 20% over the previous year.

2 –  ~~FIRST~~ SECOND AMENDED COMPLAINT

During this time, Ms. Scott repeatedly generated record-setting monthly sales.  In August 2018, Ms. Scott generated the largest ever gross monthly sales in Delta's 90-year history.

8.

Ms. Scott also improved many of Delta's internal systems and processes, which led to increased productivity, efficiency, and profit.  In 2017, Ms. Scott implemented an electronic time keeping system that reduced payroll-processing time and increased the accuracy of time keeping. Those improvements in turn led to reduced labor costs.

9.

In 2018, Ms. Scott decreased non-billable hours for her crew from 13.5% to less than 5.0%.  That reduction led to a $4,000 profit increase for every one thousand hours of trucking.

10.

Ms. Scott recently defended Delta in an audit by the Oregon Department of Transportation, and successfully reduced the fine against Delta by $9,000.

11.

Ms. Scott researched and changed Delta's social media marketing companies, resulting in increased exposure and a savings between $20,000 and $40,000.

12.

Ms. Scott identified a loss of income when outsourcing labor, and implemented a change that made it profitable for Delta to outsource labor to independent truck drivers.

13.

Ms. Scott reduced overtime for dispatch and delivery teams.

14.

Ms. Scott grew Delta's existing customer base with profitable new customers that each represented over $50,000 in new sales.

15.

During Ms. Scott's first six months of employment, she researched and prepared business analyses recommending ways that Delta could reduce costs and save money.  Those

3 –   FIRST SECOND AMENDED COMPLAINT

recommendations included changes to Delta's practices regarding tire shredding, dump fees, and equipment purchases.  Ms. Scott's recommendation to purchase a tire shredder resulted in annual projected savings of $80,000 and the ability to pursue additional customers who bring in tires. Ms. Scott audited surrounding competitive dumpsites and their fees and recognized that Delta was undervaluing their dumpsite.  Delta increased its fees, which resulted in increased gross sales and profit margins.  Ms. Scott also introduced Mr. Pickett to a land use developer in the Portland area to help Delta expand their mining area.

16.

Ms. Scott was also well-respected by her coworkers.  Under her leadership, only one person left the company for reasons other than retirement or discharge due to poor performance or behavior.  This low turnover was remarkable in an industry that is usually seasonal.  Ms. Scott maintained between 17 and 23 direct reports, more than any other department in both of Delta's companies.

17.

Ms. Scott also represented Delta in the community, acting as the primary contact for Lane Leaders and attending weekly meetings and outside evening functions in that capacity.  Ms. Scott attended Santa Clara Neighborhood meetings as a Delta representative to help with the dog park, and was an active member of the Construction Utility and Career Day on behalf of Delta.

18.

Ms. Scott's performance was exceptional.  She achieved all of the foregoing accomplishments in only two years of employment.  And her exceptionalism did not go unnoticed.  Within three months of being brought on board, Ms. Scott was quickly promoted to Sales and Dispatch Manager.  She also earned two substantial pay raises in the two years she was employed.

19.

Additionally, on January 30, 2018, Ms. Scott received a glowing performance appraisal with an overall rating of 9 out 10.  Out of the nine performance categories in the appraisal,

4 –  ~~FIRST~~ SECOND AMENDED COMPLAINT

Ms. Scott received eight "Excellent" ratings and one "Good" rating. Her supervisor noted that Ms. Scott was excellent at generating and maintaining new sales accounts, and that she was incredible in her role with dispatch and took great strides to make it profitable and run smoothly. Ms. Scott's achievements were known throughout the company. A member of Delta's Board of Directors specifically thanked Ms. Scott at the company's 2017 holiday party for her accomplishments and continued raving about her in the weeks that followed.

### Ms. Scott Opposed Delta's Unlawful Conduct

20.

Throughout her tenure at Delta, Ms. Scott, a prior business owner, noticed numerous instances of questionable practices and conduct occurring within the company that she believed was evidence of violation of state or federal laws, rules or regulations. Ms. Scott continually brought these concerns to Mr. Pickett and other Delta managers in an effort to both help the company correct its behavior and to oppose the practices.

21.

For example, Ms. Scott reported to Delta management that Delta's drivers were exceeding the amount of driving hours allowed under regulations adopted by the United States Department of Transportation and the Oregon Department of Transportation.

22.

Ms. Scott complained to Delta management that the application of employer policies regarding per diem payments was being unfairly applied, being given to certain employees and not to others, regardless of who actually qualified for the payments.

23.

Ms. Scott complained to Delta management that Delta was discriminating against employees based on gender and/or sexual orientation, in violation of Oregon law, in regards to health care coverage because only chosen employees were allowed to cover domestic partners on their health insurance policies and the ability to cover domestic partners under the company's health care policy was hidden from employees.

5 – ~~FIRST~~ SECOND AMENDED COMPLAINT

24.

Ms. Scott brought forth information to Delta management that a member of the Board of Directors was fraudulently reported as being on Delta's payroll, despite not being an employee of the company, for the specific purpose of participating in Delta's health care insurance.

25.

Ms. Scott complained to Delta management that Delta was violating Oregon's paid leave laws. Ms. Scott complained that Delta did not have a written policy capable of being distributed and advertised to its employees as required under Oregon law. Ms. Scott complained that a specific Delta employee took eight hours from Ms. Scott's PTO based solely on a suspicion that Ms. Scott did not work on a certain day, in violation of Ms. Scott's legal right to paid leave.

26.

Ms. Scott brought to light to Delta management that Delta had failed to follow its contractual promise to its employees to match up to 3.0% of employee contributions into their 401(k) accounts, and in at least one case, to even start an employee's 401(k) after he had qualified.

27.

Ms. Scott informed Delta management that she knew about and opposed Delta's conduct of falsifying unemployment documents to enable a male employee with a scheduled hunting trip to claim benefits for lack of work during the trip when there was plenty of work.

28.

Ms. Scott similarly informed Delta management that she knew about and opposed Delta's conduct in falsifying two employees' payroll documents that were submitted to Lane Worksource so that Delta would receive a $3,500 reimbursement per employee for their training hours.

29.

Ms. Scott informed Delta management numerous times that the company's paychecks and wage records were not reflecting the pay periods for which work was being performed. The

6 –  ~~FIRST~~ SECOND AMENDED COMPLAINT

pay periods for each paycheck was the week prior to the date that the check was issued.  For example, Ms. Scott's first paycheck was issued for the week prior to the date that she started – a week that she did not work.  In June 2018, Delta rewrote its payroll records by changing the dates of the pay periods for which paychecks were issued.  Delta made this change to all future paychecks and "adjusted" paychecks that had already been issued, extending back to at least 2016.  Given how Delta's accounting program functioned, this change likely would have affected all salaried employees for several years back and likely would have affected those employees' W2 statements.

30.

Ms. Scott reported to Delta management that sex discrimination and harassment was occurring in the workplace.  Initially, on January 12, 2018, Ms. Scott reported to Vice President Steve Crippen that another Delta employee was discriminating based on gender and creating a hostile work environment for Ms. Scott and other female employees.  Mr. Crippen responded by telling Ms. Scott, "Good luck with that" and that he was not going to get involved.  On or around January 16, 2018, Ms. Scott reported the harassing conduct directly to Mr. Pickett.  Mr. Pickett likewise took no action and the harassment continued to occur.  Ms. Scott's final report of gender discrimination and harassment occurred on October 5, 2018, again to Mr. Pickett.  Mr. Pickett's response was to tell Ms. Scott that he did not view the male employee's conduct as sexist, but rather simply a difference in personality with Ms. Scott.  Mr. Pickett fired Ms. Scott seven days later.

**Delta Retaliated Against Ms. Scott for Opposing Its Unlawful Conduct**

31.

Ms. Scott's reports of and opposition to Delta's illegal conduct were not well-received by management.  Mr. Pickett knew that if Ms. Scott remained at Delta, she would continue to oppose Delta's unlawful conduct and policies.  If state or federal officials learned of Delta's wrongdoing, they might investigate and hold Delta accountable.  To stop Ms. Scott from making further complaints, Mr. Pickett looked for an opportunity to terminate her employment.

7 –  ~~FIRST~~ SECOND AMENDED COMPLAINT

32.

On September 20, 2018, Ms. Scott emailed Mr. Pickett requesting a meeting to discuss, among other things, her back surgery that was scheduled for October 30, 2018.  Ms. Scott's back surgery and subsequent recovery was a serious health condition that would prohibit her from performing the functions of her position, thereby qualifying her for protected leave under both the Family and Medical Leave Act (FMLA) and the Oregon Family Leave Act (OFLA).

33.

Ms. Scott and Mr. Pickett met on October 2, 2018.  At this meeting, Ms. Scott asked about applying for benefits under FMLA and the OFLA to cover the time she would be out of the office for her surgery.  Mr. Pickett knew, or should have known, that Ms. Scott's condition qualified her for the protections of the FMLA and OFLA, including the protection of her job.  On October 2, at the latest, Delta was on notice that Ms. Scott likely had a qualifying condition under FMLA/OFLA, thereby triggering its obligations to give her the requisite notices and opportunity to apply for protected leave.

34.

Mr. Pickett did not want Ms. Scott to invoke her protections under FMLA/OFLA because he wanted to fire her to put an end to her protected whistleblowing and opposition to illegal practices.  To prevent Ms. Scott from taking protected medical leave and thwart his plan to fire her, Pickett actively discouraged her from using FMLA or OFLA leave.  He let her know that using FMLA/OFLA leave was frowned upon at the company and assured Ms. Scott that Delta would cover her leave of absence with paid time off.  Mr. Pickett told Ms. Scott that Delta had taken care of other employees without using FMLA/OFLA leave.  Mr. Pickett gave Ms. Scott no reason to think he would fire her.

35.

On October 12, 2018, 10 days after Delta was on notice of Ms. Scott's right to the protections of the FMLA and OFLA, and just two-and-a-half weeks before her scheduled back surgery, Mr. Pickett fired Ms. Scott, with no notice and no severance.  Mr. Pickett's purported

8 –  ~~FIRST~~ SECOND AMENDED COMPLAINT

reason for firing Ms. Scott, effective immediately, was that Delta might at some point in the future acquire a company whose president specialized in sales and dispatching and that company's president might want to take over the position Ms. Scott currently held at Delta.  This reason was clearly a pretext, hiding Delta's true motivation to fire Ms. Scott in retaliation for her whistleblowing activity and her opposition to Delta's illegal practices.  Mr. Pickett fired Ms. Scott on October 12 with no notice so he could prevent her thereafter from invoking her rights to protected leave.

36.

Ms. Scott's termination resulted in significant non-economic damages to her.  As a result of her summary expulsion from Delta with no explanation, no notice and thereby no opportunity to explain to her crew that she had been fired or say goodbye to them, and no severance that in any way acknowledged Ms. Scott's loyal and significant service to her employer, Ms. Scott has suffered embarrassment, humiliation, stress, anxiety, loss of sleep, and constant worry about her future.  Ms. Scott will not have the protection of FMLA when she secures new employment.  If she needs to take time off work for treatment for her back, which could take up to a year to fully heal, that leave will not be protected and her new place of employment could terminate her. Ms. Scott's termination also forced her to push back the date of her surgery, forcing her to endure continued pain that would have finally been resolved by her surgery, because of the uncertainty of insurance coverage and the cost of medical care now that she is unemployed. Ms. Scott was also now faced with the prospect of trying to find a job while she recovers from surgery.  This is exactly the risk that the FMLA and OFLA were designed to protect against. Ms. Scott has suffered non-economic damages as a result of Delta's conduct described herein in the amount of $1,000,000.

37.

Delta's illegal termination of Ms. Scott's employment has also resulted in significant economic losses to her, including lost past and future wages in the amount of $86,000 a year, plus annual raises averaging $10,500 per year for the next 10 years, in the total amount of

9 – ~~FIRST~~ SECOND AMENDED COMPLAINT

$1,332,500, plus a bonus equal to 25% per year.  In addition, Ms. Scott's economic losses include lost benefits, including the cost of health insurance in the amount of $925.85 per month, or $111,102 over 10 years, and a 3% 401(k) match for a period of 10 years.  Plaintiff reserves the right to update the exact amount of her economic damages at the time of trial.

## FIRST CLAIM FOR RELIEF

### Violation of the Family and Medical Leave Act — 29 U.S.C. §§ 2601–2654

### Against Defendants Delta and Pickett

38.

Ms. Scott realleges paragraphs 1 through 37.

39.

The FMLA prohibits an employer from interfering with, restraining, or denying the exercise of, or the attempted exercise of, any right protected under the FMLA.  Under 29 C.F.R. § 825.220, it is unlawful for an employer to refuse to authorize FMLA leave, discourage an employee from using such leave, induce an employee to waive their FMLA rights, or trade the employee's right to take FMLA leave for some other benefit.

40.

Delta and Mr. Pickett are each an "employer" under the FMLA.  Ms. Scott is an "eligible employee" under the FMLA.  Ms. Scott's back surgery and recovery qualify as a "serious health condition" under the FMLA.  Immediately upon receiving notice of a potentially qualifying health condition from Ms. Scott, Delta became responsible for ensuring Ms. Scott received the protections of the FMLA.

41.

Prior to her termination, Ms. Scott was entitled to 12 work weeks of protected FMLA leave because of her serious health condition which would have prevented her from performing the functions of her position.  The FMLA prohibited Delta from revoking any employment benefits that had accrued prior to the date the leave commenced.  Upon return from protected leave, Ms. Scott would have been entitled to return to her position as Sales and Dispatch

10 – ~~FIRST~~ SECOND AMENDED COMPLAINT

Manager or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.  Ms. Scott was also entitled to maintain her health care coverage under Delta's group health plan during her protected leave.

42.

Ms. Scott was entitled to the protections of the FMLA.  Mr. Pickett, acting on behalf of Delta, interfered with her right to take FMLA leave through the actions described above.  Those actions were taken in an effort to interfere with Ms. Scott's right to take FMLA leave.

43.

As a result of Delta's interference with Ms. Scott's right to take FMLA leave, Ms. Scott has suffered the damages described in paragraphs 36 and 37 above.

44.

In addition, pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii), Ms. Scott is entitled to pre-judgment interest at a rate of 9% per annum on the amount of lost past salary and benefits, which will be proven at trial.

45.

Ms. Scott is also entitled to equitable relief in the form of reinstatement to her former position at the end of her medical leave, with all benefits and compensation, and an award of salary during her medical leave as promised by Mr. Pickett.

46.

Pursuant to 29 U.S.C. § 2617(3), Ms. Scott is entitled to an award of her costs and reasonable attorney fees.

## SECOND CLAIM FOR RELIEF

## Violation of the Oregon Family Leave Act (OFLA) - ORS §§ 659A.150–659A.186

## Against Defendants Delta and Pickett

47.

Ms. Scott realleges paragraphs 1 through 37.

11 –  ~~FIRST~~ SECOND  AMENDED COMPLAINT

48.

The OFLA prohibits an employer from denying protected leave to an eligible employee or retaliating or discriminating against an employee because the employee inquired about the OFLA, requested protected leave, or invoked a provision of the OFLA.

49.

Delta is a "covered employer" under the OFLA.  Ms. Scott is an "eligible employee" under the OFLA.  Ms. Scott's back surgery and recovery qualify as a "serious health condition" under the OFLA.  Ms. Scott was entitled to the protections of the OFLA.

50.

Prior to her termination, Ms. Scott was entitled to 12 weeks of protected OFLA leave because of her serious health condition, which would have prevented her from performing the functions of her position.  The OFLA prohibited Delta from revoking any employment benefits that had accrued prior to the date the leave commenced.  Upon return from protected leave, Ms. Scott would have been entitled to return to her position as Sales and Dispatch Manager or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.  Ms. Scott was also entitled to maintain her health care coverage under Delta's group health plan during her protected leave.

51.

Delta, through Mr. Pickett, violated the OFLA when he retaliated against Ms. Scott for inquiring about the OFLA and requesting protected leave.  After Ms. Scott informed Mr. Pickett that she wanted to discuss taking protected medical leave for her back surgery, Mr. Pickett retaliated by discouraging her from using protected leave, inducing her to waive her OFLA rights, and falsely assuring Ms. Scott that her leave would be covered with paid time off.  Mr. Pickett denied Ms. Scott her OFLA leave by firing her before she could use it.

12 – FIRST SECOND AMENDED COMPLAINT

52.

As a result of Delta's interference with Ms. Scott's right to take OFLA leave, Ms. Scott has suffered the damages described in paragraphs 36 and 37 above.

53.

Ms. Scott is further entitled to equitable relief under ORS 659A.885(1) in the form of reinstatement to her former position at the end of her medical leave, with all benefits and compensation, and an award in an amount equal to her salary during her medical leave as promised by Mr. Pickett, plus payment of her health insurance coverage during her medical leave.

54.

Ms. Scott is also entitled to an award of her costs and reasonable attorney fees under ORS 659A.885(1).

### THIRD CLAIM FOR RELIEF
### Violation of ORS 659A.199 Against Delta

55.

Ms. Scott realleges paragraphs 1 through 37.

56.

Pursuant to ORS 659A.199, it is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

57.

Ms. Scott reported in good faith information that she believed was evidence of a violation of a state or federal law, rule or regulation as described in paragraphs 20-30, above.

58.

In retaliation for those reports, Delta denied Ms. Scott's right to use FMLA and OFLA leave and terminated her employment.

13 – FIRST SECOND AMENDED COMPLAINT

59.

As a result of Delta's violation of ORS 659A.199, Ms. Scott suffered the damages described in paragraphs 36 and 37 above.

60.

Ms. Scott is also entitled to an award of punitive damages under ORS 659A.885(3)(a) in an amount of $250,000.  Delta repeatedly ignored reports from Ms. Scott that its business practices violated state and federal law.  Many of its unlawful practices, such as discriminating against employees based on their sex or retaliating against employees who attempt to exercise rights protected under state and federal law, continue to go unchecked, to the detriment of the public.  It is likely that its unlawful conduct will continue unless Delta faces substantial consequences for its actions.  The unlawful conduct perpetrated against Ms. Scott was intentional and malicious and was done to stop her from bringing forward actions and policies that are harmful to the public, regardless of the fact that its conduct would have severe financial and emotional impacts on Ms. Scott at a vulnerable point in her life.  Delta's conduct is reprehensible and deserving of a substantial punitive damages award.

61.

Ms. Scott is entitled to equitable relief under ORS 659A.885(1) in the form of reinstatement to her former position at the end of her medical leave, with all benefits and compensation, and an award of salary during her medical leave as promised by Mr. Pickett.

62.

Ms. Scott is entitled to an award of her reasonable attorney fees under ORS 659A.885(1).

**FOURTH CLAIM FOR RELIEF**

**Violation of ORS 659A.030(1)(f) Against Defendant Delta**

63.

Ms. Scott realleges paragraphs 1 through 37.

14 – ~~FIRST~~ SECOND AMENDED COMPLAINT

64.

Under ORS 659A.030(1)(f), it is an unlawful employment practice for any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice.

65.

Ms. Scott opposed Delta's unlawful practices as alleged above in paragraphs 20 through 30.

66.

Delta discharged Ms. Scott because of her opposition to Delta's unlawful practices, in violation of ORS 659A.030(1)(f).

67.

As a result of Delta's violation of ORS 659A.030(1)(f), Ms. Scott has suffered the damages described in paragraphs 36 and 37 above.

68.

Ms. Scott is entitled to an award of punitive damages under ORS 659A.885(3)(a) in an amount of $250,000. Delta repeatedly ignored reports from Ms. Scott that its business practices violated state and federal law. Many of its unlawful practices, such as discriminating against employees based on their sex or retaliating against employees who attempt to exercise rights protected under state and federal law, continue to go unchecked, to the detriment of the public. It is likely that its unlawful conduct will continue unless Delta faces substantial consequences for its actions. The unlawful conduct perpetrated against Ms. Scott was intentional and malicious and was done to stop her from bringing forward actions and policies that are harmful to the public, regardless of the fact that its conduct would have severe financial and emotional impacts on Ms. Scott at a vulnerable point in her life. Delta's conduct is reprehensible and deserving of a substantial punitive damages award.

69.

Ms. Scott is entitled to equitable relief under ORS 659A.885(1) in the form of reinstatement to her former position at the end of her medical leave, with all benefits and compensation, and an award of salary during her medical leave as promised by Mr. Pickett.

70.

Ms. Scott is entitled to an award of her reasonable attorney fees under ORS 659A.885(1).

## FIFTH CLAIM FOR RELIEF

## Personal Liability for Retaliation for Opposing Unlawful Conduct — ORS 659A.030(1)(f)

## Against Defendant Pickett

71.

Ms. Scott realleges paragraphs 1 through 35 and 63 through 65.

72.

Mr. Pickett, as Delta's President and General Manager, had the sole authority to terminate Ms. Scott's employment.  Mr. Pickett exercised that authority when making the decision to discharge Ms. Scott.  Mr. Pickett discharged Ms. Scott to retaliate against her for opposing Delta's unlawful practices in violation of ORS 659A.030(1)(f) as described above.

73.

As a result of Pickett's conduct described herein, Ms. Scott is entitled to the damages set forth in paragraphs 66, 67, 68 and 70.

## SIXTH CLAIM FOR RELIEF

## Wrongful Discharge Against Both Defendants

74.

Ms. Scott realleges paragraphs 1-51 and 60.

75.

As set forth in Claims for Relief One and Two, above, Ms. Scott was terminated on October 12, 2018 in retaliation for pursuing her protected rights under the FMLA and OFLA.

16 – FIRST SECOND AMENDED COMPLAINT

76.

The rights Ms. Scott was pursuing under the FMLA and OFLA are job-related rights of important public interest.  Defendants' termination of her employment for pursuing those rights was wrongful.

77.

As a result of Defendants' wrongful termination, Ms. Scott has suffered the damages set forth in paragraphs 36 and 37, above.

78.

Ms. Scott is entitled to an award of punitive damages in the amount of $250,000 against each Defendant resulting from their wrongful conduct in retaliating against her for exercising job-related rights of important public interest protected under state and federal law.  Their wrongful continues to go unchecked, to the detriment of the public and is likely to continue unless Defendants face substantial consequences for their actions.  The unlawful conduct perpetrated against Ms. Scott was intentional and malicious and had severe financial and emotional impacts on Ms. Scott at a vulnerable point in her life.  Defendants' conduct is reprehensible and deserving of a substantial punitive damages award.

**DEMAND FOR JURY TRIAL**

74. 79.

Plaintiff demands trial by jury.

**PRAYER**

WHEREFORE, Ms. Scott prays for relief as follows:

a)      On all claims for relief and against all Defendants, reinstatement to her former position, complete with all benefits and compensation to which she was entitled immediately prior to her termination, and economic damages in an amount equal to her salary during her medical leave plus payment of her health insurance coverage and 3% 401(k) match during her medical leave;

17 – FIRST SECOND AMENDED COMPLAINT

b)      On her First Claim for Relief, against Defendants Delta and Pickett, an award in the amount of $2,776,727, plus 3% 401(k) match;

c)      On her Second Claim for Relief, against Defendants Delta and Pickett, an award in the amount of $2,776,727, plus 3% 401(k) match;

d)      On her Third Claim for Relief, against Defendant Delta, an award in the amount of $2,776,727, plus 3% 401(k) match, plus punitive damages in the amount of $250,000;

e)      On her Fourth Claim for Relief, against Defendant Delta, an award in the amount of $2,776,727, plus 3% 401(k) match, plus punitive damages in the amount of $250,000;

f)      On her Fifth Claim for Relief, against Defendant Pickett, an award in the amount of $2,776,727, plus 3% 401(k) match, plus punitive damages in the amount of $250,000;

g)      On her Sixth Claim for Relief, against both Defendants, an award in the amount of $2,776,727, plus 3% 401(k) match, plus punitive damages in the amount of $250,000 against each;

hg)     Against all Defendants on all claims, an award of pre-judgment interest on all economic losses sustained through the date of verdict and an award of her costs and disbursements incurred herein;

ih)     Against all Defendants on Ms. Scott's First, Second, Third, Fourth and Fifth Claims for Relief, all claims, an award of her reasonable attorney's fees, costs and disbursements incurred herein; and.

ji)     And for any other relief the Court deems just and equitable.

DATED this 16th ____ day of _____ April, 2020.

HUTCHINSON COX

By: _____
        Andrea D. Coit, OSB #002640
        Jonathan M. Hood, OSB #133872
        Of Attorneys for Plaintiff

18 – FIRST SECOND AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

I certify that on ~~April 16,~~ 2020, I served or caused to be served a true and complete copy of the foregoing SECOND~~FIRST~~ AMENDED COMPLAINT on the party or parties listed below as follows:

☒    Via the Court's Efiling System

☐    Via First-Class Mail, Postage Prepaid

☐    Via Email

☐    Via Personal Delivery

☐    Via Facsimile

Sarah E. Ames
sarahames@dwt.com
Christie S. Totten
christietotten@dwt.com
~~Caitlin P. Shin~~
~~caitlinshin@dwt.com~~
Davis Wright Tremaine LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201
Facsimile: (503) 778-5299
        Of Attorneys for Defendants


HUTCHINSON COX


By: _____
        Andrea D. Coit, OSB #002640
        Jonathan M. Hood, OSB #133872
        Of Attorneys for Plaintiff


19 – ~~FIRST~~ SECOND AMENDED COMPLAINT